Henry Ginsburg and Bernice K. Ginsburg v. Commissioner.
Ginsburg v. Commissioner
Docket No. 77739.
United States Tax Court
T.C. Memo 1960-37; 1960 Tax Ct. Memo LEXIS 252; 19 T.C.M. (CCH) 193; T.C.M. (RIA) 60037; March 8, 1960
*252 Deductions: Losses: Goodwill. - Taxpayer, a registered pharmacist, was a member of a partnership which dissolved. A partnership return was filed by the receiver and goodwill in the amount of $12,785.43 was taken as a deduction. The Tax Court held that taxpayer had failed to prove that a loss of goodwill resulted from the dissolution of the partnership. The purchasers offered and paid $59,200 for this business, which was over $15,000 in excess of the fair market value and was more than $13,000 in excess of the book value of the tangible assets. After the sale, the business was resumed at the same location and under the same name. Whatever goodwill existed was evidently acquired by the purchasers and not abandoned or lost. Furthermore, taxpayer failed to establish a basis for determining the amount of such loss. Robert G. MacAlister, Esq., Grant Building, Pittsburgh, Pa., for the petitioners. Charles A. Boyce, Esq., for the respondent. TIETJENS
Memorandum Opinion TIETJENS, Judge: The respondent determined a deficiency of $930.21 in income tax for the calendar year 1955. The sole issue for decision is whether Henry Ginsburg (hereinafter referred to as the petitioner) *253 sustained a deductible loss on account of goodwill upon the liquidation of the business of a partnership in which he was a partner. The facts are found as stipulated. The petitioners' return was filed with the director of internal revenue at Pittsburgh, Pennsylvania. The petitioner is a registered pharmacist. In 1945 he entered into a partnership with Glyn Thomas to operate a drug store and lunch counter known as Medical Center Pharmacy in the Temple Building in New Castle, Pennsylvania. In 1951 Ginsburg and Thomas agreed to dissolve the partnership. The dissolution was accomplished by having each partner submit a sealed bid to his attorney. The highest bid would retain the business and the amount would be paid to the retiring partner. Ginsburg bid $25,000 against $22,500 by Thomas, and thereby acquired Thomas's interest on November 8, 1951. To raise the $25,000 necessary to pay Thomas, Ginsburg borrowed $18,500 from a bank. He also agreed to sell a one-fourth interest in the business to Eugene Cozza for $12,500. Cozza gave Ginsburg $6,500 in cash and a note for $6,000. On January 1, 1952, Ginsburg and Cozza began business as partners trading under the name Medical Center Pharmacy. *254 Goodwill had been entered as an asset on the books of Medical Center Pharmacy in the amount of $12,785.43 in the transaction in which Eugene Cozza became a partner on January 1, 1952. From January 1, 1952 to and including January 31, 1953, petitioner and Eugene Cozza were doing business as partners in a drug store and luncheon counter trading as the Medical Center Pharmacy. A branch store was opened in January 1953, which was also operated under the name Medical Center Pharmacy. From February 1, 1953 to and including August 24, 1955, petitioner Henry Ginsburg, Eugene Cozza and Albert Cozza were engaged as partners in such business. The principal place of business was located in the Temple Building. A lease for a period of 5 years had been executed between the partnership and the owners on January 13, 1953. Temple Building was sold on May 16, 1955 to Castle Enterprises, Inc., and the lease referred to herein was assigned to Castle Enterprises, Inc. The lease contained the following paragraph: "TENTH. In the event the said premises, or any part thereof, shall come into possession of any receiver, assignee, trustee, or of any sheriff, or other officer, said lessor may terminate *255 this lease by notice in writing to said lessee, or may accept rent from such receiver, assignee, trustee, or other officer, without affecting or impairing the rights of Lessor under this lease." Eugene M. Cozza and Albert Cozza commenced an action in equity against Henry Ginsburg for dissolution of the partnership. Elmer D. O'Neill was appointed by the Court on July 22, 1955 as receiver for the partnership to dispose of the partnership property and distribute the proceeds to the respective parties. It was agreed between the partners that petitioner Henry Ginsburg would receive 70 per cent of the proceeds and the remaining partners 30 per cent for their interests in the business. By letter dated July 26, 1955, each of the partners was notified by Castle Enterprises, Inc., that the lease executed on January 13, 1953, was terminated. The receiver closed both stores on July 27, 1955, pending an appraisal of the assets and the sale of such assets by public sale. Independent appraisers were engaged to appraise the fair market value of the assets. The appraisers submitted their report to the Court declaring the value to be $51,044.72, not including the value of the lease. The appraisers *256 valued the merchandise in the two stores at $36,035.84, the furniture and fixtures at $7,500, accounts receivable at $1,543.44, and balance in checking account $5,965.44. A public sale was held on August 24, 1955, by the receiver for purposes of disposing of the assets, excluding cash and bank accounts, of the partnership. Petitioner Henry Ginsburg bid $59,000 and Eugene M. Cozza and Albert Cozza bid $59,200, which was the successful bid. The purchasers of the assets of the partnership have been operating a business at the same locations and operating under the name of Medical Center Pharmacy since the receiver's sale on August 24, 1955. On December 16, 1955, Ginsburg opened a pharmacy business operating under the name of Prescription Center. On or about September 18, 1956, a partnership return was filed by Elmer D. O'Neill, Receiver, for the Medical Center Pharmacy covering the period beginning October 1, 1954 and ending September 30, 1955. This return was prepared and filed on an accrual basis method of reporting income. In such return ordinary partnership income in the amount of $5,757.82 was reported with petitioner Henry Ginsburg's distributive share reported as $4,030.48. *257 In computing the ordinary income of the partnership, an item designated "goodwill" in the amount of $12,785.43 was taken as a deduction. In the petitioners' return for 1955 they reported wages and salaries from Medical Center Pharmacy $557.50; a loss from business in the amount of $2,131.11 and other income of $8,456.08; computed from longterm capital gain on sale of fixtures and equipment $8,851.22, one-half thereof reported, and $4,030.48 as income from partnership. The respondent determined that the item designated "goodwill" taken as a deduction on the partnership return was not an allowable deduction, and that the petitioners' share of the gain on sale of assets of the partnership was $252.25, taxable to the extent of $126.13. In determining the gain on the sale of partnership assets the respondent allocated the selling price to each asset by dividing the book value of each asset by the total book value of all assets and applying the percentage derived to the total selling price. The gain was computed as follows: Book
Per-
Selling
Value
centage
Price
Gain
Inventory
$36,035.84
61.8
$36,585.60
$549.76
Furniture
and
Fixtures
9,468.61
16.3
9,649.60
180.99
Goodwill
12,785.43
21.9
12,964.80
179.37
$58,289.88
100.0
$59,200.00
$910.12
*258 The petitioner contends that the purchased goodwill of the partnership as shown on the books from January 1952, became worthless in the year 1955 when the partnership was terminated and liquidated because of litigation between the partners, causing the appointment of a receiver, closing of the business, termination of the lease, sale of assets at public auction and the failure of the partners to enter into covenants not to compete with each other. When Ginsburg bought out Thomas and formed a partnership with Eugene Cozza as of January 1, 1952, the amount of $12,785.43 was entered as an asset on the books of the new partnership. When this partnership came to an end in 1955, it is argued, this goodwill was lost, no part of the sales price may be treated as payment for it, and there could have been no sale of the goodwill in the absence of an agreement that the seller will not compete with the buyer. Goodwill has been defined as an intangible consisting of the excess earning power of a business which may arise from good reputation, or customers' buying habits, or other intangibles affecting earnings. . In one sense it implies a condition *259 where a substantial number of customers will continue to deal with the establishment from habit, regardless of change of ownership. . Goodwill exists as a valuable asset only as an integral part of a going business and cannot be sold or transferred apart from that business in which it was developed and to which it is inseparably attached. . The petitioner has not proved a loss of the goodwill. The fair market value of the inventories, fixtures and equipment at both stores as fixed by independent appraisers was $43,535.84. The book value of the same assets was $45,504.45. The Cozzas offered and paid $59,200 for this business. It is inconceivable that they would pay over $15,000 in excess of the fair market value and more than $13,000 in excess of the book value of the tangible assets unless they believed that there were intangible advantages in acquiring the business. They must have considered the goodwill of the business worth some amount. The petitioner offered $59,000 as his own bid and must have considered the value of the business as a going concern to be considerably *260 more than the value of the stock and fixtures. The business was closed for only about one month, and apparently a new lease was successfully negotiated. After the sale, the Cozzas resumed the business at the same locations and under the same name. Also the price offered by each party was in spite of the possible competition of the other as it did not contemplate a covenant to compete. The Cozzas did not need the petitioner's covenant since they resumed the business in the same location, selling the same merchandise and with two of the former partners present. Whatever goodwill existed was evidently acquired by the purchasers and not abandoned or lost. There is no showing that the goodwill attached only to the petitioner and could not be attributed to the other partners. Hence the petitioner has not proved that a loss of goodwill resulted or that he or the partnership is entitled to a deduction for such a loss. Furthermore, we note that while it was stipulated that goodwill had been entered on the books as an asset in the amount of $12,785.43 as of January 1, 1952, there is no evidence in the record tending to show that goodwill in that amount, or any similar amount, existed at that *261 time. Therefore, even if a loss of goodwill were proved, the petitioner has not established a basis for determining the amount of such loss. We approve the respondent's determination on the goodwill issue. Decision will be entered under Rule 50.